**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | |
|---|---|
| JIMMY JOSEPH NEWELL, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   No.: 1:16-CV-00494-HSM-CHS |
| | ) |
| BLAIR LEIBACH,[1] | ) |
| | ) |
| Respondent. | ) |
| | ) |

## MEMORANDUM OPINION

Petitioner Jimmy Newell has filed a pro se petition for writ of habeas corpus under 28
U.S.C. § 2254, challenging the constitutionality of his detainment pursuant to his Bradley County
guilty plea [Doc. 1]. After reviewing the parties' filings and the relevant state court record, the
Court has determined that Petitioner is not entitled to relief under § 2254 and no evidentiary
hearing is warranted. *See* Rules Governing § 2254 Cases, Rule 8(a) and *Schriro v. Landrigan*, 550
U.S. 465, 474 (2007). For the reasons set forth below, the § 2254 petition will be **DENIED**, and
this matter will be **DISMISSED**.

### I. BACKGROUND

This action arises out of Petitioner's sentence from the Bradley County Criminal Court.
On May 20, 2014, after the State rested its case in a jury trial regarding one of Petitioner's charges,

---

[1] Petitioner has fully served his sentence and is no longer in the custody of the state of
Tennessee. However, because Petitioner was in custody at the time of filing, this petition is still
justiciable.

Petitioner's counsel negotiated a plea agreement with the State [Doc. 39-1 p. 19-21; Doc. 39-5].[2] Pursuant to this agreement, Petitioner pled guilty to multiple counts of violation of probation, assault, three counts of domestic assault, misdemeanor theft, and two counts of felony theft in exchange for an effective sentence of four years in the custody of the Tennessee Department of Correction with parole eligibility after thirty percent of his sentence was served [*Id.*]. The trial court sentenced him accordingly [*Id.*].

Since his plea, Petitioner has pursued various avenues to collaterally attack his sentence. First, on June 3, 2014, Petitioner filed a "Motion to Withdraw Plea and Appoint Conflict-Free Counsel" in the Bradley County Criminal Court, claiming his plea was "involuntary and coerced by counsel" because of the "misadvice [sic] and misinformation of appointed counsel" regarding the length of incarceration, the cumulative effect of the plea, his ineligibility for alternative sentencing, and counsel's conflict of interest [Doc. 39-1 p. 3]. He also argued his sentence was improperly enhanced [*Id.*]. The court denied the motion after a hearing [*Id.* at 19-42]. Petitioner then appealed the judgment on September 28, 2015 [*Id.* at 43-44]. He alleged his plea was not knowing and voluntary due to errors by the trial court and his trial counsel [Doc. 39-7]. He claimed that the trial court failed to advise him of the effects of his plea, improperly interfered in the plea negotiations, and incorrectly assumed Petitioner had a prior felony [*Id.*]. He further claimed he was denied effective assistance of counsel because trial counsel erroneously advised Petitioner as to his eligibility for community corrections, failed to inform Petitioner about the effect of his sentence, and had a conflict of interest [*Id.*]. The Tennessee Court of Criminal Appeals ("TCCA") affirmed the trial court on August 8, 2017 [Doc. 39-9]. *State v. Newell*, No. E2015-01913-CCA-

---

[2] The trial court found that prior to trial, Petitioner's counsel obtained an offer of three years to be served in TDOC, which Petitioner rejected. It likewise found that after the State rested, it was Petitioner who asked counsel to seek a plea agreement [Doc. 39-1 p. 34].

R3-CD, 2017 Tenn. Crim. App. LEXIS 692, at *2 (Tenn. Crim. App. Aug. 8, 2017) ("*Newell I*"). Petitioner filed an application for permission to appeal to the Tennessee Supreme Court ("TSC") [Doc. 39-11], which was denied on January 18, 2018 [Doc. 39-12].

On April 7, 2016, Petitioner filed a petition for post-conviction relief in Hardeman County, where he was detained at the time, alleging that the State violated the plea agreement by submitting a letter to the Tennessee Board of Parole strongly objecting to Petitioner's early release [Doc. 39-13 p. 18-19, 25]. The court denied the petition, finding Petitioner had not presented an appropriate claim for post-conviction relief [*Id.* at 28-29]. Petitioner appealed on May 4, 2016 [*Id.* at 30-32], maintaining the trial court erred by summarily dismissing his petition [Doc. 39-14 p. 4]. The TCCA affirmed the judgment of the habeas court on December 12, 2016 [Docs. 39-17, 39-18]. *Newell v. Ford*, No. W2016-00941-CCA-R3-HC, 2016 Tenn. Crim. App. LEXIS 924, at *2 (Tenn. Crim. App. Dec. 12, 2016) ("*Newell II*"). Petitioner again applied for permission to appeal to the TSC [Doc. 39-19], which denied review [Doc. 39-20].

On July 29, 2016, Petitioner filed a petition for Writ of Error Coram Nobis in Bradley County challenging his sentence based again on the State's letter to the Board of Parole [Doc. 39-21 p. 3-6]. The court found that such relief was not available for a previously entered guilty plea [*Id.* at 8]. Petitioner appealed [*Id.* at 14-15] alleging that the trial court erred by summarily dismissing his petition for writ of error coram nobis because the writ is available to a defendant who pled guilty under some circumstances, Petitioner was without any other corrective processes under state law, and his pro se petition should have been liberally construed as timely [Doc. 39-22]. The TCCA affirmed the ruling on July 3, 2017, finding that the writ of error coram nobis is not available to challenge convictions arising from a guilty plea [Doc. 39-24]. *Newell v. State*, No.

E2016-01755-CCA-R3-ECN, 2017 Tenn. Crim. App. LEXIS 580, at *2 (Tenn. Crim. App. July 3, 2017) ("*Newell III*").

On October 17, 2016, Petitioner filed a petition for post-conviction relief in the Bradley County Criminal Court alleging, *inter alia*, that his plea was not knowing and that his counsel was ineffective [Doc. 39-26 p. 3-7]. The court found that the petition was untimely and Petitioner was not entitled to a tolling of the statute of limitations [*Id.* at 8-26]. Petitioner filed a notice of appeal on January 1, 2017 [*Id.* at 24-25, 26] but failed to file an appellate brief [Doc. 39-27]. The TCCA granted two extensions of time before ordering Petitioner to file his brief [*Id.*]. When Petitioner still failed to comply, the TCCA dismissed [Doc. 39-28]. Petitioner filed a "Motion to Recall Mandate" arguing his incarceration in Texas prevented him from filing his brief, which the TCCA denied [Doc. 39-29]. Petitioner then filed a Motion for Reconsideration of the court's denial of his motion to recall mandate, which the TCCA again denied [Doc. 39-30]. Petitioner filed an application for permission to appeal to the TSC [Doc. 39-31] and the TSC ordered him to show cause as to why his application should not be dismissed as untimely [Doc. 39-32]. On February 28, 2018, after Petitioner again failed to comply, the TSC dismissed the action [Doc. 39-33].[3]

Petitioner filed the instant petition on December 5, 2016 [Doc. 1].[4] The Court originally dismissed the petition for lack of exhaustion [Docs. 7, 8] because at the time of filing, the TCCA

---

[3] At some point during the proceedings, Petitioner also attempted to submit a petition for writ of certiorari to the Supreme Court of the United States, which the Court returned because it did not comply with the rules of the Court [*See* Doc. 37 p. 50]. Petitioner also filed a writ of certiorari in the Davidson County Chancery Court, relating to the denial of his parole [Doc. 39-9 p. 15]. Petitioner also notes in his petition that he filed a "Motion to Enforce Plea Agreement" in the Bradley County Criminal Court, which was denied [Doc. 58 p. 1-2].

[4] Petitioner originally filed with the Middle District of Tennessee, but the petition was transferred to this Court pursuant to 28 U.S.C. §2241(d) [Doc. 5].

had not ruled on any of Petitioner's claims. Petitioner filed two motions for reconsideration noting the TCCA's disposition of his appeal of the Hardeman County judgment on his petition for post-conviction relief [Docs. 9, 10].[5] The Court granted Petitioner's motion only insofar as it reopened the case [Doc. 15]. Respondent filed a motion to dismiss based on Petitioner's failure to exhaust state remedies [Doc. 21] and Petitioner rejoined with a "Motion to Strike Exhaustion Defense" [Doc. 28]. The Court denied Respondent's motion to dismiss and granted Petitioner's motion to strike to the extent that it stayed Petitioner's case pending exhaustion of his state post-conviction remedies [Doc. 30]. On March 5, 2018, Respondent filed a Notice indicating Petitioner appeared to have exhausted his state court remedies [Doc. 34].

Petitioner then filed a motion to amend his petition and supplement the record [Doc. 37], which Respondent opposed [Doc. 42]. The Court denied Petitioner's motion to amend as moot, and instead ordered both Petitioner and Respondent to file consolidated pleadings, concisely setting forth the grounds for relief [Doc. 52]. On March 11, 2019, Petitioner complied by filing a "Reply" which he characterized as "a consolidated and organized statement of all claims for relief with supporting facts" [Doc. 58 p. 12]. Respondent answered [Doc. 62] and Petitioner replied [Doc. 63].

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified in 28 U.S.C. §2254, a district court may not grant habeas corpus relief for a claim that a state court

---

[5] After the Court's dismissal, Petitioner also filed a "Notice of Appeal" to this Court [Doc. 11] and a "Motion for Certificate of Appealability" [Doc. 14]. He also filed an appeal with the Sixth Circuit Court of Appeals, who stayed the appeal pending the rulings of this Court [Docs. 13, 17]. After this Court granted Petitioner's motions for reconsideration, it denied Petitioner's Motion for Certificate of Appealability as moot [Doc. 15] and the Sixth Circuit dismissed his appeal for lack of jurisdiction [Doc. 25].

adjudicated on the merits unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1) and (2). This standard is intentionally difficult to meet. *Woods v. Donald*, 575 U.S. 312, 316 (2015). A district court may only grant habeas relief under the "contrary to" clause where the state court decides a question of law or materially indistinguishable set of facts conversely to the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). To grant habeas relief under the "unreasonable application" clause, the Court must find that the state court's decision was an "objectively unreasonable" – not simply erroneous or incorrect – application of the correct legal principles to the facts. *Id.* at 409-11. The AEDPA also requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). Where the record supports the state court's findings of fact, those findings are entitled to a presumption of correctness which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In addition to the stringent standard for succeeding on the merits of a claim, the grant of habeas relief is further restrained by exhaustion requirements and the doctrine of procedural default. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). In order for a claim to be considered on habeas review, the petitioner must first exhaust state remedies for that claim. 28 U.S.C. §2254(b)(1). Exhaustion requires a petitioner to "fairly present" each federal claim to all levels of the state appellate system, meaning he presented the "same claim under the same theory" up to the state's highest court, *Wagner v. Smith*, 581 F.3d 410, 414, 418 (6th Cir.

2009), to ensure that states have a "full and fair opportunity to rule on the petitioner's claims," *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990); *see O'Sullivan*, 526 U.S. at 842. Tennessee has determined that presentation to the TCCA will satisfy the requirement of presentation to the state's highest court. Tenn. S. Ct. R. 39. If a claim has never been presented to the highest available state court and is now barred from such presentation by a state procedural rule, that claim is procedurally defaulted and barred from federal habeas review. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Procedural default may also occur when a petitioner presented the claim to the highest court but the state court was prevented from "reaching the merits of the petitioner's claim" because petitioner failed to comply with an applicable state procedural rule, which is regularly enforced and is an "adequate and independent" state ground. *Id.* (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)); *Seymour v. Walker*, 224 F.3d 542, 549–50 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84–87 (1977)).

A claim that has been procedurally defaulted may be considered on its "merits only if the petitioner establishes cause for his failure to comply with the state procedural rule and actual prejudice from the alleged violation of federal law" or "demonstrates that his is 'an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Wallace v. Sexton*, 570 F. App'x 443, 452 (6th Cir. 2014) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); s*ee also House v. Bell*, 547 U.S. 518, 536 (2006). To show sufficient "cause," Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Murray*, 477 U.S. at 488. Where petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

### III. ANALYSIS

#### A. Procedural Default

In his consolidated pleading, Petitioner raises the following claims (as paraphrased by the Court):

(1) The State violated the terms of the plea agreement by opposing Petitioner's parole.

(2) Petitioner received ineffective assistance of counsel because trial counsel:

    a.  Had a conflict of interest;

    b.  Failed to object, pre-trial, to the overly broad language in the indictment;

    c.  Failed to challenge a variance between the indictment and proof offered at trial;

    d.  Failed to object to the admissibility of certain evidence;

    e.  Failed to object to a detective's statement identifying Petitioner;

    f.  Stipulated to the identity of Petitioner; and

    g.  Failed to fully advise Petitioner as to the consequences of a mistrial.

(3) Petitioner's plea was involuntary and unintelligent because:

    a.  The trial court committed errors by:

        i.  Failing to fully advise Petitioner regarding the plea;

        ii.  Participating in plea negotiations;

        iii.  Relying upon materially untrue facts during sentencing;

        iv.  Preventing the disclosure of the plea agreement in open court and on the record; and

        v.  Not permitting Petitioner to withdraw his plea.

    b.  Trial counsel was ineffective for:

      i. Erroneously advising Petitioner regarding his eligibility for community corrections;

      ii. Failing to fully inform Petitioner of the consequences of the plea agreement;

      iii. Failing to correct the trial court's factual error and disclose the plea agreement on the record;

      iv. Failing to present Petitioner as a favorable candidate for alternative sentencing; and

      v. Failing to request a sentencing hearing.

(4) The indictment against him was overbroad and vague.

(5) Petitioner is "actually innocent."

(6) Petitioner received ineffective assistance of appellate counsel.

(7) Petitioner received ineffective assistance of post-conviction counsel.[6]

[Doc. 58].

Petitioner's multiple collateral attacks have resulted in a lengthy and complex procedural history, in which he has appealed to the TCCA several times. First, in appealing the denial of his Motion to Withdraw Plea to the TCCA, Petitioner argued the trial court erred because his plea was not knowing and voluntary [Doc. 39-7]. He claimed his plea was involuntary due to three errors by the trial court and three issues rendered trial counsel ineffective [*Id.*]. In his appeal of the

---

[6] Although Petitioner later includes issues (5), (6), and (7) with his claims for relief in his brief, he first suggests these claims as "cause" to excuse his procedural default. *Compare* Doc. 58 p. 24 *with* Doc. 58 p. 15. Moreover, the substantive argument Petitioner offers regarding these claims lends itself more readily to cause and prejudice [Doc. 58 p. 56-59]. As discussed below, these claims are procedurally defaulted and do not warrant independent relief. However, given the leniency afforded to pro se petitioners, the Court finds that Petitioner intended to raise these issues as cause to excuse his procedural default and they will be discussed as such below.

Hardeman County Criminal Court's denial of post-conviction relief, Petitioner challenged only that the trial court erred by summarily dismissing his petition for not presenting a valid claim for habeas relief [Doc. 39-14]. In his appeal of Bradley County's denial of Writ of Error Coram Nobis, he challenged only the court's holding that the writ was not an appropriate form of relief for the violation alleged [Doc. 39-22]. Finally, while Petitioner filed a notice of appeal regarding Bradley County's denial of post-conviction relief, Petitioner filed no appellate brief and his appeal was accordingly dismissed [Doc. 39-28].

Petitioner only presented claims to the TSC in his applications for permission to appeal, which does not satisfy exhaustion requirements.[7] Petitioner has thus properly raised only claims 2(a), 3(a)(i)-(iii), (3)(a)(v), and 3(b)(i)-(ii), above, to the TCCA. As state remedies are now foreclosed to Petitioner,[8] all remaining claims are technically exhausted but procedurally defaulted and can only be considered if Petitioner adequately pleads cause and prejudice. *Engle v. Isaac*, 456 U.S. 107, 125-26 n. 28 (1982).

As cause, Petitioner pleads: (1) the ineffective assistance of post-conviction counsel and appellate counsel under *Martinez v. Ryan*, 566 U.S. 1, 18 (2012); (2) that he is actually innocent; (3) his failure to file his post-conviction appellate brief was caused by a prison mailing issue and the TCCA's refusal of permission to late-file his brief; and (4) "at the time, it was not a firmly established rule that a violation of the plea agreement must be brought in a post-conviction proceeding." Each of Petitioner's claims will be addressed in turn.

---

[7] *See Olson v. Littles*, 604 F. App'x 387, 402 (6th Cir. 2015) (quoting *Castille v. Peoples*, 489 U.S. 346, 351 (1989)) (holding that presentation of a claim "for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor, [does not] constitute fair presentation.").

[8] *See* Tenn. Code Ann. §40-30-102 (providing Tennessee's one-year statute of limitations and one petition rule).

Petitioner is correct that in some circumstances the ineffective assistance of counsel may constitute "cause" to excuse a petitioner's procedural default. The Supreme Court has carved out a narrow exception that allows a substantial claim of ineffective assistance of post-conviction counsel to constitute "cause" for underlying claims of ineffective assistance of counsel when the state limits presentation of those claims to post-conviction proceedings or employs a procedural framework that "makes it highly unlikely . . . that a defendant [had] a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino v. Thaler,* 569 U.S. 413, 429 (2013) (citing *Martinez,* 566 U.S. at 18). This exception applies in Tennessee. *See Sutton v. Carpenter,* 745 F.3d 787, 795-96 (6th Cir. 2014)). For ineffective assistance of counsel to constitute cause to excuse Petitioner's procedural default of his claims, this Court must find that: (1) the claims of ineffective assistance of trial counsel were "substantial," (2) there was no counsel or counsel was ineffective during the state collateral review, (3) the state collateral review proceeding was the "initial" review proceeding, and (4) the state-law system requires or strongly encourages ineffective assistance claims to be raised in initial-review collateral proceedings. *Trevino,* 569 U.S. at 423 (citing *Martinez,* 566 U.S. at 13-14, 16-17). The Supreme Court has expressly held that the *Martinez* exception does not apply to the ineffective assistance of appellate counsel, *Davila v. Davis,* 137 S. Ct. 2058, 2062-63 (2017), and the Sixth Circuit has only applied the exception to claims of ineffective assistance of counsel. *See Abdur-Rahman v. Carpenter,* 805 F.3d 710, 714, 16 (6th Cir. 2015).

Accordingly, the *Martinez/Trevino* framework could only possibly excuse Petitioner's procedural default of his underlying claims of ineffective assistance of counsel. However, Petitioner procedurally defaulted these claims when he failed to raise them on appeal of his petition for post-conviction relief, but he did, in fact, present them in his post-conviction petition. As such,

the *Martinez/Trevino* framework does not apply. *See West v. Carpenter*, 790 F.3d 693, 698-99 (6th Cir. 2015). To the extent that Petitioner attempts to claim the ineffectiveness of post-conviction appellate counsel, this cannot constitute cause under *Martinez*. *Martinez*, 566 U.S. at *16-17.

As to Petitioner's claim that actual innocence excuses his procedural default, such a claim requires a habeas petitioner to establish that in light of new, reliable evidence – either eyewitness accounts, physical evidence, or exculpatory scientific evidence – that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *House*, 547 U.S. at 536 (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Petitioner has pointed to no "new" evidence of his actual innocence, that is, evidence not available at the time of trial. *See Schlup*, 513 U.S. at 324. In fact, Petitioner's only "evidence" of his innocence is his own continued assertion that he is innocent. This will not excuse Petitioner's procedural default.

Petitioner further contends that he did prepare an appellate brief for his appeal of the Bradley County Criminal Court's dismissal of his post-conviction petition and provide it to prison authorities for mailing and prison authorities failed to post it. Petitioner likewise claims that he attempted to late-file an appellate brief, but was denied by the court due to his two prior extensions of time to file. However, there is no evidence in the record to prove either of these claims. Moreover, the Court notes that Petitioner must show an external factor which "prevented him from raising the issue in his first appeal." *Murray*, 477 U.S. at 488. Petitioner's delay prevented the filing of his appellate brief; the court was not required to counteract Petitioner's inaction. The court's rejection of a late-filed brief, in Petitioner's fourth appeal to the TCCA, did not prevent him from raising the claims in the first place, and did not constitute cause.

Finally, Petitioner summarily argues that "at the time, it was not a firmly established rule that a violation of the plea agreement must be brought in a post-conviction proceeding." Even given the leniency afforded pro se petitioners, the Court cannot construe this as meaningful cause to excuse a procedural default. Petitioner did in fact challenge what he viewed as a violation of the plea agreement in both of his post-conviction petitions. It is not clear how a rule requiring plea agreement violations to be raised in post-conviction proceedings could have prevented Petitioner from raising his claims in post-conviction proceedings. As Petitioner must present affirmative evidence as to cause,[9] the Court cannot excuse Petitioner's default on this basis. Petitioner has not pleaded sufficient cause and accordingly, only his non-procedurally defaulted claims will be considered on their merits.

### B. Merits

Petitioner challenges the validity of his guilty plea. Specifically, he avers that he did not knowingly, understandingly, and voluntarily enter his plea due to three alleged errors of the trial court and three instances of ineffective assistance of his counsel. He also claims the trial court erred by not allowing Petitioner to withdraw his guilty plea to correct a manifest injustice.

For a guilty plea to be valid, it must be entered voluntarily and intelligently. *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). To determine if a plea is voluntary, the Court must consider "all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749 (1970). To knowingly enter a plea, Petitioner must have "sufficient awareness of the relevant circumstances and likely consequences" of his plea and be informed about all the direct consequences of his plea. *Id.* at 748, 755. The direct consequences of the plea include, *inter alia*,

---

[9] *See Lundgren v. Mitchell*, 440 F.3d 754, 763-64 (6th Cir. 2006) (petitioner must do more than "rely on conclusory assertions of cause and prejudice," and must "present affirmative evidence or argument as to the precise cause and prejudice produced.").

the maximum possible sentence Petitioner might serve. *Hart v. Marion Corr. Inst.,* 927 F.2d 256, 259 (6th Cir. 1991).

### i.    Trial Court Errors

Petitioner first claims the trial court failed to fully advise him of the maximum possible penalty he faced if convicted and failed to ensure Petitioner understood the terms of the plea agreement [Doc. 58 p. 37-38]. He says that as a result of this failure, he entered his plea with the understanding he would be sentenced to four years of community corrections and would only serve time in the TDOC if he violated the terms of community corrections [*Id.*]. Respondent contends, however, that the TCCA's holding was not an unreasonable application of clearly established Supreme Court precedent because the trial court both informed Petitioner that he could have received a greater sentence if convicted and questioned Petitioner during the plea colloquy regarding his understanding of the plea agreement [Doc. 62 p. 25-27].

During the plea colloquy, Petitioner testified under oath that he had gone over the plea agreements with his attorney prior to signing [Doc. 39-5 p. 97]. The court asked "… according to the judgments here, that your sentence will include your going to the Tennessee Department of Correction to serve the balance of your term on your felony cases, is that correct, sir?" and Petitioner responded in the affirmative [*Id.* at 98]. The trial court expressly stated it would not send Petitioner to community corrections. [*Id.*]. Although he did not audibly respond, when asked if he understood, Petitioner did not indicate that he did not understand [*See id.*]. Petitioner likewise indicated he had discussed the potential of a "far greater sentence" and the possibility of his sentences running consecutively with his attorney, which factored into his decision to accept the plea offer [*Id.* at 101].

Petitioner challenged this issue in his appeal of the trial court's denial of his motion to withdraw his plea. The TCCA held that while the trial court did not expressly mention the maximum potential sentence, as required by Tennessee Rule of Criminal Procedure 11(b)(1)(B), the questioning by the trial court substantially complied with the rule by ensuring that Petitioner had discussed the potential for a "far greater sentence" with counsel. *Newell I*, at *18. The court determined that Petitioner was not entitled to relief. *Id.* at *18.

In order for a plea to be voluntary and knowing, a petitioner should be informed of the maximum possible sentence he could serve. *See Hart*, 927 F.2d at 259. Here, Petitioner was notified of the maximum possible sentence he could receive as part of his plea agreement, which was "the balance of his felony charges" in custody of TDOC [Doc. 39-5 p. 97]. While it did not calculate the maximum possible sentence Petitioner faced if he proceeded to trial, the trial court ensured that Petitioner had discussed with counsel that he could have received a "far greater sentence" if the State had requested his sentences run consecutively [*Id.* at 101]. Petitioner answered that he had and he is now bound by that answer. *See Ramos v. Rogers*, 170 F.3d 560, 564 (6th Cir. 1999). The fact that Petitioner was made to understand the maximum possible sentence by his own counsel rather than by the trial court will not render defective an otherwise valid guilty plea. *See Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (noting the Supreme Court has "never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel"). Despite Petitioner's claim that he believed he would be receiving a sentence of community corrections, there is no vagueness or ambiguity in the record that would explain his supposed confusion as to his sentence. Petitioner's self-serving

assertions do not entitle him to relief. *See Stout v. United States*, 508 F.2d 951, 953 (6th Cir. 1975) (holding that subjective expectations by the defendant regarding the possible length of sentence, if not realized, do not render involuntary an otherwise valid plea.). The Court finds the TCCA's holding was neither contrary to nor an unreasonable application of federal law.

Petitioner next argues his plea was rendered involuntary and unknowing because the trial court impermissibly interfered in plea negotiations by telling the parties that a plea deal would have to include a sentence to TDOC [Doc. 58 p. 38-41]. Respondent contends that the TCCA's rejection of this argument was not unreasonable because the court did not interfere with plea negotiations, but rather indicated it would reject a plea agreement that it did not feel was warranted [Doc. 62 p. 27-28].

After denying Petitioner's motion for judgment of acquittal, the court ordered a short recess [Doc. 39-5 p. 95]. Upon return, but still out of the presence of the jury, the parties alerted the trial court to a potential plea agreement [*Id.*]. The trial court informed the parties

> Well, but for the record, you all said something about taking a plea that's an open ended [sic], but the state wants to agree to run it concurrent. Now I'm not going to have my hands tied on [sic] the middle of a trial. If you all want to work the case out – and I'll just be blunt. You know, he's been to the pen; he just got back. Any plea's going to have to include going to TDOC.

[*Id.*]. Petitioner challenged this statement in his appeal of the trial court's denial of Petitioner's motion to withdraw his plea. There, the TCCA found that under the Tennessee Rules of Criminal Procedure that the trial court should not participate in plea negotiations and cannot require the state to make a particular plea offer. *Newell I*, at *18-19. However, it held that the trial court did not participate or require the state to make a certain plea offer, but merely voiced that it would not accept certain plea offers, pursuant to its authority under Tennessee Rule of Criminal Procedure 11(c)(4) or (5). *Id.* at *19.

The Court does not find that the challenged statement by the trial court invalidated Petitioner's plea. While "a judge's participation in plea negotiation is inherently coercive," *United States v. Barrett*, 982 F.2d 193, 194 (6th Cir. 1992), here the trial court did not participate in the negotiations; rather it provided preemptive notice that it would not sign off on any plea agreement that did not include time in TDOC. The fact that the trial court warned the parties about the terms it would and would not accept in any plea agreement did not impact Petitioner's ability to accept or reject the plea, and thus did not affect the voluntary nature of the plea. Petitioner seems to imply that he would have been able to obtain a more favorable plea offer absent this statement by the court. However, in immediate response to the court's statement, the State indicated that it had already offered a sentence in TDOC [Doc. 39-5 p. 95]. In addition, the state's plea offer prior to trial also involved a sentence in TDOC. Petitioner has presented only his own opinion that the court's statement had any coercive effect on the negotiations, an opinion that is not supported by the evidentiary record. The TCCA's holding was neither contrary to nor an unreasonable application of federal law and Petitioner is not entitled to relief.

Petitioner also relies on the court's mid-trial statement to challenge the validity of his plea because he alleges that the trial court relied on materially false information, specifically that Petitioner had previously been in a penitentiary, which he had not [Doc. 58 p. 41-42]. Respondent argues Petitioner's sentence was not imposed by the court's discretion, but rather was the result of a negotiated plea agreement, and the trial court's understanding had no bearing on what Petitioner understood about the plea agreement [Doc. 62 p. 28]. Petitioner made this same challenge in his appeal of the denial of his motion to withdraw plea. The TCCA ruled the trial court's statement did not impact the voluntariness of Petitioner's plea because the trial court's erroneous assumption had no bearing on whether or not Petitioner accepted the plea offer. *Newell I*, at *20. The Court

agrees. Not only did the state court's misunderstanding have no impact on the terms of the plea agreement, Petitioner remained at liberty to accept or reject the plea offer regardless of any misperception by the court. Petitioner is not entitled to relief on this claim.

Finally, Petitioner claims the trial court erred when it refused to allow him to withdraw his plea to correct a "manifest injustice" [Doc. 58 p. 44-46]. Respondent maintains that Petitioner raises this claim only as a violation of state law and as such it is not cognizable on habeas relief [Doc. 62 p. 29]. The Court agrees with Respondent.

In his appeal from the denial of his motion to withdraw his plea, Petitioner presented this claim as a violation of state law. He does the same in his federal petition. As a claim for relief based on an error of state law, this claim is not cognizable on habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). To the extent Petitioner now attempts to characterize this as a federal claim, it was not fairly presented to the state courts and is now procedurally defaulted. Moreover, there is no absolute right to withdraw a guilty plea. *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007).

## ii.    Ineffective Assistance of Counsel

Petitioner also challenges his plea as involuntary because he received ineffective assistance when his counsel: (1) erroneously advised Petitioner regarding his eligibility for community corrections; (2) failed to fully inform Petitioner of the direct consequences of the plea; and (3) had a conflict of interest.[10]

The ineffective assistance of trial counsel in facilitating a guilty plea can render the plea involuntary. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985). To successfully prove that counsel was

---

[10] In the instant petition, Petitioner challenges counsel's alleged conflict of interest as a freestanding claim of ineffective assistance of counsel. However, he challenged this conflict of interest in the state court as rendering his plea unknowing and involuntary.

constitutionally ineffective, a defendant must establish: (1) that counsel's performance was deficient such that he was no longer "functioning as the 'counsel' guaranteed under the Sixth Amendment," and (2) that counsel's "performance prejudiced the defense . . . so as to deprive the defendant of a fair trial" and undermine the reliability of trial results. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The Supreme Court has clarified that when a federal court reviews a state court's application of *Strickland*, which sets its own high bar for claims, "establishing that a state court's application was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). "In those circumstances, the question before the habeas court is 'whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.'" *Id.*; *see Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA").

Petitioner first claims his plea was not voluntary and intelligent because trial counsel misinformed him regarding his eligibility for community corrections [Doc. 58 p. 46-50]. Petitioner claims that because of defective advice from counsel, he understood he was eligible for and would be sentenced to community corrections, when he was not in fact eligible [*Id.*]. Respondent notes that during the plea colloquy, the trial court expressly declined to refer Petitioner to community corrections and both trial counsel and the prosecutor denied that community corrections was ever discussed as part of the plea agreement [Doc. 62 p. 29-31].

Petitioner challenged trial counsel's performance in his motion to withdraw his plea and after an evidentiary hearing the trial court "discredited Defendant's testimony and accredited trial counsel's testimony that community corrections was never a part of the plea agreement." *Newell I*, at *24. The TCCA determined that the evidence did not preponderate against the trial court's finding when both trial counsel and the prosecutor denied that community corrections was ever a part of the plea negotiations and there was nothing in the record indicating otherwise. *Id.*

While the TCCA identified *Strickland* as the governing standard for ineffective assistance of counsel claims, here its decision rested not on its application of federal law, but on a factual finding that there was no evidence in the record indicating that community corrections was ever a suggested sentence for Petitioner. The Court cannot find that this is an unreasonable factual finding. Outside of Petitioner's own continued assertions that he believed he was being sentenced to community corrections, there is no evidence that a community corrections sentence was proposed. Indeed, the one instance where "community corrections" appears in the record is when trial counsel indicated to the trial court that Petitioner would like to request a sentence to community corrections, to which the court unequivocally said no [Doc. 39-5 p. 97]. Petitioner has not demonstrated that counsel was deficient for his alleged misunderstanding and is not entitled to relief.

Petitioner also claims that his trial counsel failed to inform him of the direct consequences of the plea agreement; specifically, he claims that counsel did not explain the concept of parole eligibility to him [Doc. 58 p. 50-52]. Petitioner again reiterates that he believed he was being sentenced to community corrections and would only serve a portion of his sentence if he violated community corrections [*Id.*]. Respondent answers that the TCCA's holding that counsel was not ineffective was supported by the record, which shows that Petitioner was repeatedly informed that

he was pleading guilty in exchange for a four-year sentence in TDOC with a release eligibility of thirty percent [Doc. 62 p. 31-32].

Addressing Petitioner's motion to withdraw plea, the trial court again discredited Petitioner's testimony. *Newell I*, at *25. It found that Petitioner was informed multiple times that he was accepting a prison sentence, openly acknowledged the State's offer after hearing the full terms, and admitted that he was entering a plea to avoid a lengthier sentence. *Id.* The TCCA held that the trial court's finding was supported by the record. *Id.*

The Court agrees. The trial court credited trial counsel's testimony and discredited Petitioner's, finding counsel had discussed parole eligibility with Petitioner. *Id.* Such credibility decisions are not for federal courts sitting in habeas to reweigh. *See United States v. Persaud*, 866 F.3d 371, 381 (6th Cir. 2017). Moreover, even if Petitioner could demonstrate that counsel had not discussed eligibility for parole with him, this would not render his guilty plea invalid. While direct consequences of the plea must be discussed with Petitioner, eligibility for parole is not one of these consequences. *See McAdoo v. Elo*, 365 F.3d 487, 495 (6th Cir. 2004). The Supreme Court has "never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary." *See Hill*, 474 U.S. at 56 (1985). Accordingly, the TCCA's holding is not contrary to clearly established Supreme Court precedent and Petitioner is not entitled to relief on this claim.

Lastly, Petitioner claims that counsel had an impermissible conflict of interest and should have withdrawn from representation [Doc. 58 p. 25-29]. Respondent contends TCCA's holding that trial counsel did not have an actual conflict of interest was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent [Doc. 62 p. 21-23].

At trial, Petitioner was represented by Larry Wright, an assistant public defender. Richard Hughes, the district public defender, was the step-brother of Kelly Sullivan, the victim in one of Petitioner's domestic violence charges.[11] *Newell I*, at *26. On his motion to withdraw his plea, Petitioner argued counsel should have withdrawn from representation based on this relationship.

The trial court found Petitioner's testimony to be not credible and credited trial counsel's testimony that he investigated the matter and did not believe there was an actual conflict of interest. *Id.* The TCCA noted that under *Strickland*, counsel may be ineffective when representation is impacted by a conflict of interest. *Id.* (citing *Strickland*, 466 U.S. at 692). It found, however, that Petitioner had not proven that counsel himself had either a *per se* conflict of interest or an actual conflict of interest. *Id.* at *27. The TCCA held that regardless of whether it would have been prudent to withdraw, Petitioner had only demonstrated a potential conflict of interest and was thus not entitled to relief. *Id.* at *26-27.

In order to demonstrate ineffective assistance of counsel based on a conflict of interest relative to his guilty plea, Petitioner must establish (1) an actual conflict of interest and (2) that the conflict adversely affected the voluntary nature of the guilty plea entered. *Thomas v. Foltz*, 818 F.2d 476, 480 (6th Cir. 1987). To determine if an actual conflict exists, the Court must find that Petitioner has "point[ed] to specific instances in the record to suggest an actual conflict or impairment of [his] interests." *Id.* at 481 (internal punctuation and citations removed). "There is no violation where the conflict is irrelevant or merely hypothetical; there must be an actual significant conflict." *Id.* (citing *United States v. Mers*, 701 F.2d 1321, 1328 (11th Cir. 1983)) (internal quotations removed).

---

[11] Ms. Sullivan was also a co-defendant in another charge and a witness to one of the felony theft charges.

The Court cannot find that the TCCA's holding was an unreasonable application of federal law or that its factual finding was rebutted by clear and convincing evidence. Petitioner pointed to no evidence in the record that counsel was impaired by an actual conflict of interest. Accordingly, he has not demonstrated that counsel was ineffective and is not entitled to relief.

## IV. CONCLUSION

For the reasons set forth above, Petitioner's petition for a writ of habeas corpus [Doc. 1] will be **DENIED,** and this action will be **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

The Court must now consider whether to issue a certificate of appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismisses a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

Reasonable jurists would not disagree that neither the trial court nor trial counsel committed errors which rendered Petitioner's plea involuntary or unknowing. Accordingly, a **COA SHALL NOT ISSUE.**

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**SO ORDERED** this 30th day of March, 2020.

_____*Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE